Thank you, your honor. Gene Iredale appearing for Mr. Vigil, and may I express my thanks to the court for the accommodation. This case involves a 2254 petition that was filed on behalf of Mr. Vigil. Mr. Vigil was 20 years old at the time of his conviction for a violation of California Penal Code Section 273AB. We raised four issues in the brief. I'd like, with the court's permission, to focus on the fourth. That has to do with the instructions on prior similar acts, previous crimes, and the ponderance of evidence, which we believe is controlled. The result in this matter is controlled by the court's decision in Gibson v. Ortiz, which dealt with very similar, if not identical, instructions that were given at the time from the CalJet, the California Standard Jury Instruction volume. In this case, I need to advert briefly to the facts, if I might. Mr. Vigil was accused of squeezing a child, a one-year-old girl named Leah, and this caused, according to the prosecution's theory, a slow bleed, which ultimately led to her death. There was evidence as well that he had admitted to his aunt, who was called as a witness by the prosecution, that on a previous occasion he had spanked hard the older sister of Leah, the decedent, hard enough to leave a handprint on her bottom. During the course of the trial, this evidence was introduced. It was introduced two times through prosecution witnesses, and the defendant testified and admitted it. At the conclusion of the case, the trial judge, in connection not with this evidence, but in connection with other evidence having to do with the discovery of a small amount of marijuana and marijuana paraphernalia in the house, gave the jurors two instructions, actually, pursuant to CalJet section 2.50 and 2.50.1, as they were in effect at the time. The first instruction said that evidence of the commission of a wrong or crime may be considered by the jury if there was a connection between the other offense and the one with which the defendant was accused, such that it could be inferred that if the defendant committed the other offense, he also committed the crime charged in this case. Then this instruction was coupled with an instruction defining preponderance of the evidence. The counsel, you said that this instruction was given in connection with the testimony about the marijuana or right after it or what? Actually, no, I should be clear on that. The trial judge gave the instruction because he conceived that it should be given, and I believe he gave it sua sponte, as is the obligation in the California trial courts, because he perceived that that was evidence of a crime. But there was nothing about this innocuous evidence that called for that instruction to be given. And the only thing in the evidence which a reasonable jury could have construed this instruction as applying to was the previous hard spanking of physical punishment of the older sister, which was undisputed, and which under these instructions, if proven by a preponderance of the evidence, could give rise under the reasoning that Gibson versus Ortiz explained to the conviction by a preponderance of the evidence. Was the instruction was the instruction given along with the other instructions or was it given separately? Yes. Judge Kennedy, thank you. I should have clarified that it was not. It was not given at the time of the introduction of the evidence concerning marijuana. It was given with all of the other instructions at the conclusion of the case. And this is where the terrible prejudice we feel arose. Let me ask you, though. The reason I thought this would be different or is different than Gibson is in Gibson they gave a modified CALJAC where they actually specified sexual conduct and or domestic violence infractions from the previous time, and that is what I thought the Court was focusing on as being the error because it really did tie it up to if he was guilty before of sexual abuse, then he's guilty now of sexual abuse. If you could clarify two things for me. Why do you think Gibson still controls? And secondly, was there ever an argument made that the spanking was a crime and therefore should be connected up with this preponderance instruction? Yes. Let me, if I could, address that. First of all, Judge McKeon, I think your point is well taken, and it's fair to say there is that distinction that you just drew between Gibson and the instant case. That is to say the instruction there specifically alluded to sexual offenses or domestic violence offenses and dealt with the issue of predisposition. But I think that is a legitimate difference, but in this case without a legal distinction because the instruction, although slightly different in its wording, had the same effect. That is to say, from the proof of the other offense, if it was sufficiently linked or clear or similar, the language says it may be inferred that the defendant committed the other offense and therefore also committed the crime charged in this case. That was from 250.1, and then that's followed immediately by, that was from 2.50, and then it's followed immediately by the preponderance of evidence instruction, which applies to that previous act. So I think you're absolutely right. There is that difference. My point, and I think it's a fair argument, is that the difference, the slight difference in language or the nature of the previous offense really doesn't matter in light of the fact that what you have in both situations is the instruction to the jury that if the previous offense is shown and it's in Gibson, it's sufficiently similar, and in this case it's linked. The language is if it's linked, you may infer guilt of the defendant in this case, and the previous act need only be proven by a preponderance giving rise to an inference without the necessity to prove beyond a reasonable doubt. I need to beg your pardon because I got up very early this morning and there was a second part of your question and I want to make sure that I address it. Okay. The second part really went to more the practical effect at trial in terms of how this was argued. Yes. The answer to Your Honor's question is there was no reference in argument by the prosecution that this previous act was a crime, but there was repeated reference to the previous spanking of Brittany, the older sister. There is another point that I feel I need to make, and that is that in this case, we don't have to go on the basis of inference or speculation. There is in this record two separate times where it became apparent that the jury was relying on an erroneous standard in coming to their decision. At the conclusion of the jury's deliberation, they returned. They were hung, and a mistrial was declared as to the murder charge on the 273AB charge, which requires proof only that there was an assault which a reasonable person would know would be likely to lead to great bodily injury. Then, even though the penalty is the same for first-degree murder, on that charge they made a finding of guilt. Before the judge declared the mistrial, there was a colloquy between the foreperson of the jury and the judge in which the foreperson asked questions about the reasoning process and talked about if the evidence is equally balanced between the defendant and the prosecution, were to give the benefit to the defendant or were not. This colloquy occurred right in the courtroom, right at the time the verdict on the 273AB was returned, and before the jury was discharged. So it was clear that this idea that there was not a requirement of proof beyond a reasonable doubt, but instead this balancing, and if it's close enough that the defendant is favored by a preponderance or if it's equal in equipoise, the defendant gets the benefit of the doubt, this is in the record. Maybe. Yeah, okay. Your time has almost expired.  Well, I had a little trouble figuring that out. The defense position at trial was that the injury was most likely caused by the defendant. No, I know on the merits what it was. What did the defense say about the instruction? Did the defense ask that it be given at a different time? Did it ask for a different instruction? Did it want no instruction? What did it ñ what was it? Judge Schroeder, the state of the record on that is that there was no request by the defense for the instruction. It was given sua sponte by the judge. It was ñ and so as I recall, there was no specific objection raised in the trial court. However, in the court of appeal ñ Yeah. I understand that. I just wondered if there was any ñ if the trial court was ever asked to do anything different, or if this was objected to. Yes. My recollection is no. Okay. Thank you. And if I have any time to reserve, I'll reserve it. If not, I appreciate Your Honor's attention. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court. I'm Mark Johnson from the California Attorney General's Office, appearing on behalf of Appellee, addressing this instructional error argument. This ñ the argument that we're hearing today is the first time that this argument has been presented to any court. This is not the argument presented to the California courts, and it's not the argument presented in the district court. It's not even the argument presented in the opening brief. The claim, therefore, is certainly unexhausted to the extent that, A, he's relying on Gibson, the reasoning of Gibson v. Ortiz at all. That reasoning was never presented to the California appellate court or the California supreme court. It wasn't cited in the blue brief. No. And, in fact, the complaint in California was basically that the instruction ñ simply that the instruction allowed the jurors to infer guilt based on previous crimes. And secondly, the factual basis of the claim in the State courts and in the district court always was purely that the instruction related to language that the defendant had some marijuana paraphernalia found in the home after the crime was committed This connection to the previous spanking of the victim's older sister was nowhere mentioned, nor was any argument based on jury questions or anything like that. So for that reason alone, it's our position that the claim should be summarily denied because the district court ñ the claim that was presented to the district court was properly rejected. That claim was presented as a claim of ambiguous or jury instructions to be resolved under Boyd and Estelle, and the district court's conclusion was correct. This instruction was not reasonably likely to mislead the jurors under the theory that the defendant had proposed at that point. I felt the defendant ñ I must say, though, I have a little trouble when you said that it wasn't raised in the blue brief. I mean ñ The blue brief? In the blue ñ In the opening brief? In the opening brief, here. I mean, he's got the combination of Calgic 250, 250.1, 250.2, misleadingly told all jurors that a conviction could be based on proof by a preponderance of evidence of uncharged offenses. Yes, but there was no ñ there was no argument that this fell within the holding of Gibson v. Ortiz. I think the question was whether or not Gibson was cited, so that's ñ Yes. It's the same argument. Your Honor, I beg to differ. It's not the same argument. In the opening brief, the argument was, and I agree with the analysis in the opening brief, the argument was that this instruction, this set of instructions was potentially misleading and should be resolved under the authority of Estelle and Boyd. The ñ the ñ Well, the magistrate judge cited Gibson, so Gibson's been floating around in here for a while. The magistrate's judge cited Gibson. I cited Gibson in my brief. The important thing is the Petitioner never cited Gibson, and the most germane thing is this Gibson claim, or this claim at all, was never presented to the California courts in any fashion. And so the claim is certainly unexhausted for purposes of habeas review. What was ñ what was the argument presented to the last California court that dealt with this issue? Well, as I said, the ñ it was a multifaceted complaint. The gravamen was essentially that this ñ that this evidence of the marijuana use shouldn't have been admitted at all because ñ because it was inflammatory and would have allowed conviction based solely on the fact that the defendant was a bad person and that this instruction allowed for conviction based on the prior acts. And there was ñ but the important thing was there was no allegation at all. There was no connection in any way made between the ñ the factual basis that ñ that counsel is now asserting in support of this claim. That is, that ñ that the juries somehow may have used this evidence of the spanking in connection with this instruction. That was never presented to California in any way. And that's not surprising because the ñ the contention, and I think Your Honor was alluding to it earlier, there was no argument, there was no contention in this trial that this spanking should be considered in ñ in connection with this instruction or that it should even be considered as a prior crime. The instruction ñ in fact, the evidence itself was primarily based on ñ on Petitioner's own acknowledgment during a police interview that he had spanked the older sister at one point, but had ñ had, I guess, learned from his mistakes and had not applied any physical discipline to the children after that point. But we have ñ we're somewhat hampered. We now have the trial transcript, but the big transcript, and the various courts refer to things. So let me just read you something from the California Court of Appeals and then ask you if you think that this is also documented in the transcript. The California Court of Appeals says that really the objection to having marijuana evidence come in was linked with the jury instruction evidence, so that they link those two together. But then said, we assume, as do the parties, that this instruction was meant to address the drug evidence and not the prior spanking of Leah's sister. The drug evidence was not clearly connected with the killing. The prosecutor expressly disavowed any such theory. And then they talk about a cautionary instruction. Do you know of anything in the transcript where there's a cautionary instruction or where there's discussion about Leah spanking versus marijuana? I'm at ñ somewhat at a disadvantage because I was not the attorney who handled the appeal in this case, nor was I the attorney who handled the district court proceedings in this case. And so I don't know exactly what instruction they may be referring to. And this ñ and in fact, this argument that I've heard for the first time now about jury questions somehow reinforcing this is new to me as well, because this wasn't presented as a basis of the claim earlier. But if it is true that the jury asked questions about whether they could convict on ñ That's not my question. I didn't ask you about the jury question. I asked you about the California Court of Appeals discussion where they referenced spanking, but saying, at least in their view, that wasn't the theory, and the parties didn't say it was a theory. I'm just wondering, is there evidence of that in the record in some way, other than in the California Court of Appeals reference? I don't know. Okay. I just know the claims that were presented for appeal, and I know that this connection between the spanking and the instruction was never the basis for any argument. And the Court pointed that out as well, and Petitioner never disabused the court of that position, nor did he do so in the district court. In fact, and I can direct the court to the excerpts of record complaining the ñ containing the petition. It's at ER pages 63 through 67, wherein the complaint about the instruction relies exclusively on the evidence of the marijuana paraphernalia. And there's one additional point I'd like to address regarding any connection between Gibson and this case, and I think the district court was exactly right in distinguishing the two cases, because in Gibson, what we had was an instruction dealing with evidence of dispositions to commit a specific crime. And in this case, what we have here, this is ñ the jury was expressly instructed that they could not use this evidence to prove that the defendant was disposed to commit crime, but could only use it to basically establish a modus operandi. And as the district court properly pointed out as well, the jurors were additionally instructed that they had to find each element of the charge defense true beyond a reasonable doubt. The instruction here specifically referenced, before you can even use the evidence that's modus operandi evidence, you must first ñ there's an additional due process hurdle required. You must first find that that evidence is established by a preponderance of evidence before you can even use it for an inference as to whether these other additional elements of the crime itself has been established. In other words, this ñ and any juror would have understood this clearly, that this evidence of prior crimes did not relate to any element of the crime itself, and the jurors were told that to find a conviction, they had to find proof beyond a reasonable doubt as to each and every element of the charge defense. And they were additionally instructed as to what they could do with evidence of inferences. This evidence, if it was germane to anything at all in this case, and it wasn't, this instruction shouldn't have even been given. I guess the judge just gave it in an abundance of caution. But assuming that there was actual evidence that, you know, might have been germane in this case under this instruction, the jurors were first, okay, you can use that evidence to create an inference, an inference, but only first if you find that a preponderance of evidence. And then in an additional instruction, the jurors were told how to deal with evidence of inferences. Inference evidence must itself add up to proof beyond a reasonable doubt before it can be used to convict. Kagan. You've more than used your time. You have used your time. Okay. Thank you, Your Honor. Do you want to hear? Do you want to, if you, we'll give you a minute if you want to add anything urgently. Otherwise, you have used your time. I would like 60 seconds. I'll try to do it in less. My only specific reference that I need to make is this issue, the issue of the instruction, and this specific instruction was raised in the State Court of Appeal and dealt with on the merits by the State Court of Appeal. The instructional issue was raised in the district court, was raised explicitly in the opening brief, albeit, to be fair, not without the reference to Gibson. But I think it's fair that the substance of the claim, and that's what's despised and not whether a particular case decided whether the substance of the claim was fairly presented. I think it's fair to say that it was. Secondly, and finally, the Deputy Attorney General argues that this case is different from Gibson because in this case there was a discussion that you may infer. The instruction condemned in Gibson said you may but are not required to infer that the defendant had a predisposition to commit the sexual offenses. You may or not, and if you find that, you may but are not required to infer that he was likely to commit and did commit the crime or crimes. So the issue of inference in that language is present clearly. I understand that. Am I correct that you never cited Gibson in the district court and you never cited Gibson to us as being the same as this case? The district court distinguished it and the – and your adversary distinguished it in his brief. Is that correct? And your argument now is that it is the same? Yes. Okay. Yes. And I hope that wisdom is not rejected because it comes only in the reply brief. It may have come a little late. That's why I understand. All right. Thank you. My only point is I think the substance of the claim was fairly presented. Thank you so much. The case just argued is submitted for decision. We'll hear the next case, which is –
judges: Schroeder, Canby, McKeown